## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **VICKI TUCKER** | **CIVIL ACTION** |
| **VERSUS** | **NO: 12-2446** |
| **WAFFLE HOUSE, INC.** | **UNITED STATES MAGISTRATE JUDGE KAREN WELLS ROBY** |

### ORDER AND REASONS

Before the Court is Defendant, Waffle House, Inc.'s, ("Waffle House") **Defendant's Rule 12(b)(6) Motion to Dismiss (R. Doc. 9)**, seeking dismissal of all claims brought against it by Plaintiff, Vicki Tucker, ("Tucker").[1]  The motion is opposed in part, (R. Doc. 16) and Waffle House has submitted a Reply (R. Doc. 22).  The motion was noticed for submission on December 5, 2012, and heard on the briefs on that date.

### I.      Background

This is an employment discrimination case, in which Tucker's allegations are as follows.[2] Tucker is a white female aged 58, who was formerly employed as a waitress at a Waffle House restaurant located in St. Bernard Parish, between September 9, 2010 and December 23, 2010.  (R. Doc. 1-2, p. 12).[3]  She alleges that while employed at Waffle House, she "was subjected to diverse

---

[1]The parties have consented to the jurisdiction of the undersigned U.S. Magistrate Judge for all proceedings. 28 U.S.C. § 636(b); (R. Doc. 18).

[2]The case was filed in Louisiana State Court on December 27, 2011.  (R. Doc. 1-2, p. 6).  Although it is not clear from the state court filing what the actual date of filing was - the Petition states that it was "filed" on December 27, 2012, and "received" on January 5, 2012 - the citation to "December 27, 2012" is likely a typographical error, as this case was only duly removed to federal court on October 4, 2012.  (R. Doc. 1).

[3]Although Tucker's state court filing was referred to as a "petition," the Court will construe it as a "Complaint for purposes of this motion.

and bias treatment in comparison to the other employees, who were of a younger age group, different gender, different color." *Id.* at 4.[4]  Specifically, she states that two other waitresses, both African-American females, made discriminatory remarks about her race and age between November 22, 2010 and December 23, 2010, but were never disciplined by their manager, "Ms. Alveda." *Id.* at 13.

Tucker twice used Waffle House's "Associate Hotline" to complain about the discrimination, and at some point also brought the issue to her supervisor's attention.  *Id.* at 4-5.[5]  On or about December 23, 2010, her employment with Waffle House was terminated, for "reporting my discrimination to my supervisor." *Id.* at 5, 13.  She alleges that the managers who executed her discharge from Waffle House were of another race than she, and that she was replaced by a waitress who was also of the opposite race. *Id.* at 4.[6]

Subsequently, on June 20, 2011, Tucker received a letter from Waffle House, which indicated, without further specificity, that there was "sufficient evidence to support some of her allegations." *Id* at 5, 7.  Tucker then alleges that on "October 9, 2011," she filed "Charge[s] of Discrimination" with both the Louisiana Commission on Human Rights and the New Orleans, Louisiana Field Office of the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 7.[7] Tucker has also attached an Intake Questionnaire to her Complaint, dated September 25, 2011, on which she has checked boxes indicating that she was discriminated against on the basis of her race and age, and that her termination was retaliatory. *Id.* at 13.

On November 7, 2011, the EEOC returned a letter to Tucker, indicating that the EEOC was

---

[4]Although Tucker also mentions that she is disabled on both her Louisiana Commission of Human Rights form and her EEOC form, she does not indicate the specifics of her disability and does not allege that she was discriminated against on account of her disability. *See* (R. Doc. 1-2, p. 14).

[5]The date of these complaints is not clear, although her first oral complaint to the "Associate Hotline" occurred "on or about" December 2010.  (R. Doc. 1-2, p. 3).

[6]Tucker's Complaint does not further specify the race of her supervisor or her replacement.  The specific date on which Tucker alleges that she filed her EEOC Charge of Discrimination will be discussed in more detail below.

[7]All communications at issue in this matter arose from the EEOC's New Orleans, Louisiana Field Office.

closing its file on her charge because it was not timely filed.  *Id.* at 24.[8]  The EEOC's letter stated that Tucker had the right to bring suit within 90 days.  *Id.*

Tucker filed the instant suit on December 27, 2011.  *Id.* at 2.[9]  She alleges that Waffle House's conduct violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.* ("ADEA"), and that she was discriminated against on the basis of her race, age, and gender.  *Id.* at 4-5.  She also alleges that Waffle House's actions violated the Louisiana Employment Discrimination Act, La. Rev. Stat. Ann. art. § 23:301 *et seq.*, as well as her rights under the United States Constitution.  *Id.* at 5-6.[10]  Finally, she alleges that Waffle House's actions constituted conversion and abuse of process, and that Waffle House was also liable for "malicious actions."  *Id.* at 5.  She seeks both compensatory and punitive damages, including lost wages, front pay, back pay, all lost job benefits, and reinstatement in her employment.  *Id.*[11]

Waffle House has moved to dismiss the Complaint, which Tucker opposed in part (R. Doc. 16); Waffle House has filed a Reply (R. Doc. 22).  The motion was heard on the briefs on December 6, 2012.

## II.    Standard of Review

Federal Rule of Civil Procedure ("Rule") 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief may be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is

---

[8]Tucker's Complaint states that she "received" this letter on November 8, 2011.  (R. Doc. 1-2, p. 4).

[9]*See* (R. Doc. 1-2).

[10]Tucker's Complaint also asserts a claim under the "Race Discrimination in Employment Act," although she does not specify how this claim is different from the state or federal claims already mentioned.  Moreover, Tucker does not direct the Court to any specific statutory section or subsection for either the Age Discrimination in Employment Act, the Civil Rights Act, or the Louisiana Employment Discrimination Act.

[11]In its Motion, Waffle House also indicates that although Tucker's EEOC form checked a box for "retaliation," no claim for retaliation was brought in her Complaint.  (R. Doc. 9-1, p. 3 n.2).  Tucker's opposition makes no reference to a retaliation claim, beyond stating that "[u]sing the proper notice, the EEOC intake questionnaire should . . . suffice as a formal charge."  (R. Doc. 16, p. 5).  However, Tucker never denied that she failed to bring a claim for retaliation in her Complaint.

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "We must construe the complaint in the light most favorable to the plaintiff and draw all reasonable inferences in the plaintiff's favor." *Elesensohn v. St. Tammany Parish Sheriff's Office*, 530 F.3d 368, 372 (5th Cir. 2008). "A court's analysis generally should focus exclusively on what appears in the complaint and its proper attachments." *Wilson v. Birnberg*, 667 F.3d 591, 595 (5th Cir. 2012).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). In particular,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and selected quotation marks omitted). In determining whether a complaint states a claim that is plausible on its face, the court "draw[s] on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Furthermore, the factual allegations must be "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

## III.   Analysis

### A.   Conversion to Summary Judgment

As noted below, the Court has elected to consider documents not explicitly referenced in the Complaint, which it deems to be public records susceptible to taking judicial notice.[12] Therefore, the first issue is whether consideration of such documents require the Court to convert this motion

---

[12]The documents, which are an October 24, 2011 Notice of Charge of Discrimination from the EEOC to Tucker, ("Charge") and corporate filing by Waffle House with the Louisiana Secretary of State, will be discussed in more detail below. Admittedly, it is not clear whether the corporate filing was "attached" to Tucker's Complaint; the Court assumes *arguendo* that it was not, as such attachment or the lack thereof does not alter the result the Court reaches.

to one for summary judgment.[13]

"Generally, in deciding a motion to dismiss for failure to state a claim, if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment." *In re Katrina Canal Breaches Litigation*, 493 F.3d 191, 206 (5th Cir. 2007) (quoting Rule 12(b)(6)).  However, the plain language of Rule 12(b)(6) makes such conversion optional, and even where exclusion is appropriate, Fifth Circuit courts have elected to exclude documents without argument instead of converting the motion to one for summary judgment.  *See Walch v. Adjutant General's Dep't of Texas*, 533 F.3d 289, 293-94 (5th Cir. 2008) (electing to consider only those letters attached to Defendant's motion to dismiss which were "explicitly referenced" in the Complaint).  Further, consideration of public records do not require such conversion.  *Papasan v. Allain*, 478 U.S. 265, 269 n.1 (1986); *Cinel v. Connick*, 15 F.3d 1338, 1346 n.6 (5th Cir. 1994).  Certain EEOC documents are considered to fall within the category of "public records."  *Wilson v. Lockheed Martin Corp.*, No. 03-2276, 2003 WL 22384933, at *2 (E.D. La. Oct. 15, 2003) ("Any reference to EEOC documents . . . does not convert the 12(b)(6) motion to a motion for summary judgment.").

In this case, not all of the documents submitted fall under the "public records" exception.  The Court will consider these documents as they become relevant, and will make other exclusions as necessary to prevent conversion of the motion to one for summary judgment.

### B.   Whether the Court Should Grant Claims as Unopposed

Waffle House has moved to dismiss the claims Tucker has brought under Title VII, the ADEA, Louisiana state law, the United States and Louisiana Constitutions, as well as her claims for

---

[13]The exhibits attached to Tucker's Complaint are plainly within the scope of proper consideration.  For purposes of a 12(b)(6) analysis, "[i]n considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *See Wilson*, 667 F.3d at 595.  The Court finds that of the attachments to Tucker's Complaint, all but one were properly attached and referenced in the Complaint - and the one exception, a "Jury Order" which was attached but not referenced, is irrelevant for purposes of considering this motion.

conversion, abuse of process, and "malicious actions."[14]  In her opposition, Tucker opposed Waffle House's motion as to some, but not all, of these claims.  Waffle House's Reply argues that because Tucker failed to contest the motion as it related to Tucker's claims under the state and federal constitutions, or for gender discrimination, conversion, abuse of process, and "malicious actions," Waffle House's Motion to Dismiss should be granted as unopposed with respect to these claims. (R. Doc. 22, p. 1).

The Fifth Circuit has recently held that "Rule 12 does not by its terms require an opposition; failure to oppose a 12(b)(6) motion is not itself grounds for granting the motion." *Servicios Azucareros de Venezuela, C.A. v. John Deere Thibodeaux, Inc.*, 702 F.3d 794, 799 (5th Cir. 2012) (vacating dismissal where party failed to comply with Court's explicit briefing order); *Webb v. Morella*, 457 F. App'x 448, 452 (5th Cir. 2012) (reversing district court's granting of 12(b)(6) motion as unopposed due to failure to file opposition pursuant to District's local rule); *National R.R. Passenger Corp. v. Textron, Inc.*, 2013 WL 139809, at *2 (E.D. La. Jan. 10, 2013) (considering merits of a 12(b)(6) motion where party failed to file opposition).  Instead, courts have found where a claim has gone unopposed, the claims can be considered "without the benefit of legal argument on the Plaintiff's behalf."  *Jones v. City of Port Arthur*, 2012 WL 6853909, at *1 & n.2 (E.D. Tex. Dec. 5, 2012) (citing, *e.g.*, *Morella* and considering merits of 12(b)(6) motion even where no response was filed); *see Pizzini v. Bank of America, N.A.*, 2012 WL 1834052, at *2 & n.2 (W.D. Tex. May 18, 2012) (applying same reasoning to motion for judgment on the pleadings).

This case is slightly different from the examples listed above, as Tucker in fact filed an opposition, in which she simply failed to address all of Waffle House's contentions for dismissal. Indeed, in her opposition Tucker elected to affirmatively advocate for the preservation of some claims, admit that others could not be contested, and failed to mention the rest.  Other courts in this district have found that, where an intent to dismiss claims is unequivocal, such an Order can issue. *See, e.g.*, *Elwakin v. Target Media Partners Operating Co., LLC*, No. 11-2648, 2012 WL 669068,

---

[14]For reasons specified below, Tucker did not actually bring all of these "claims;" specifically, she did not bring a claim under the Louisiana State Constitution.

at *2 (E.D. La. Feb. 29, 2012) (Roby, M.J.) (finding dismissal appropriate where plaintiff affirmatively disavowed state law claims "despite language" in her complaint "that seems to indicate that she intended to assert state law claims.").

Notwithstanding Tucker's attempt to differentiate, and the light it might shed on Tucker's post-hoc appraisal of the merits of some of her claims, the Fifth Circuit's sweeping aversion to unopposed grants of dispositive motions is instructive. It is not absolutely clear which claims Tucker sought to affirmatively dismiss, and therefore the Court will consider the merits of all "unopposed" claims "without the benefit of legal argument on the Plaintiff's behalf." *Jones*, 2012 WL 6853909, at *1 & n.2.

### C.   Merits of Motion - Federal Claims[15]

#### 1.   Constitutional Violations

In support of its motion, Waffle House argues that Tucker has alleged that Waffle House violated her rights under the "United States Constitution," but Tucker's Complaint fails to point to any specific constitutional provision undergirding her cause of action. Waffle House's motion assumes that such constitutional charges apply through the Fourteenth Amendment; it then argues that because Waffle House is not a state actor, this claim must be dismissed. Tucker fails to oppose this charge.

The Fourteenth Amendment to the United States Constitution precludes a state from depriving its citizens of equal protection of the laws. However, "[i]t is a well-settled tenet of federal law that state action is a condition precedent to a claim under the Fourteenth Amendment." *Pellerin-Mayfield v. Goodwill Industries*, 02-3774, 2003 WL 22174279 (E.D. La. Feb. 12, 2003) (finding suit against nonprofit company did not qualify as state action).

Here, Tucker has failed to allege that Waffle House is a state actor, and by extension failed to provide even a "threadbare recital[] of the elements of a cause of action" for a constitutional

---

[15]Neither Waffle House nor Tucker differentiate their arguments as to applicability of the ADEA from those asserted in connection with Title VII. Therefore, the merits of the arguments pertaining to these claims will be considered together, with any differences noted as appropriate.

violation. *Iqbal*, 556 U.S. at 678; *Elesensohn*, 530 F.3d at 372.  Attached to the Notice of Removal is an Annual Report from the Louisiana Secretary of State, indicating that Waffle House is a Georgia Corporation doing business in the state of Louisiana.  (R. Doc. 1-3, p. 1).[16]  This document plainly indicates that Waffle House is a private entity, not a state actor.  By extension the Court dismisses Tucker's claims brought under the U.S. Constitution.

### 2.    "Retaliation"

Tucker also checked a box for "retaliation" on her EEOC Charge, (R .Doc. 1-2, p. 24), although no claim for "retaliation" appears in her Complaint.  Waffle House does not explicitly move to dismiss such a claim - presumably because Tucker failed to raise it - out of an abundance of caution, the Court considers whether Tucker raised such a claim at all.

"[A]n employment discrimination complaint need not include [specific] facts and instead must contain only a short and plain statement of the claim showing that the pleader is entitled to relief." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) (quoting Rule 8(a)(2)).  Other courts have found that where a Title VII plaintiff checks a box on an EEOC complaint, but fails to allege facts in a subsequent civil complaint sufficient to reach the Rule 8(a) threshold, those claims should be dismissed.  *See, e.g.*, *Marshall v. Mayor and Alderman of City of Savannah, Georgia*, 366 F. App'x 91, 100-01 (11th Cir. 2010); *Aikens v. Banana Republic, Inc.*, 877 F. Supp. 1031, 1037-38 (S.D. Tex. 1995); *Rheams v. Marquette University*, 989 F. Supp. 991, 1003 (E.D. Wis. 1997) (applying *Aikens* to motion to dismiss).

In this case, Tucker's complaint is devoid of any mention of "retaliation," and therefore fails to meet the Rule 8(a) threshold.  As such, to the extent she intended but failed to assert a retaliation

---

[16]It is not clear whether this corporate filing was actually attached to Tucker's Complaint, as the document number is different than that of Tucker's Complaint.  *Compare* (R. Docs. 1-2, 1-3).  However, even assuming *arguendo* that the document was not attached to Tucker's Complaint, consideration is proper because corporate filings with the Louisiana Secretary of State are plainly "public records" properly considered by the Court.  *See Sanderson v. Maryland Casualty Co.*, No. 09-0941, 2009 WL 1402230, at *1 & n.4 (E.D. La. May 14, 2009); *Hammond v. St. Francis Medical Center*, 2006 WL 1675407, at *1 (W.D. La. Apr. 21, 2006).  Therefore, the Court elects to take judicial notice of Waffle House's corporate filing.

claim does not meet the Rule 8(a) requirement and is therefore dismissed.[17]

### 3.      Race, Age, and Gender Discrimination

Tucker has brought claims for racial discrimination under Title VII, as well as age discrimination charges under the ADEA.  Tucker's Complaint also alleges discrimination on the basis of gender.  (R. Doc. 1-2, p. 1).[18]

In support of its Motion, Waffle House argues that Tucker failed to properly exhaust her administrative remedies by filing a charge with the EEOC no later than 300 days after the complained-of violations occurred.  (R. Doc. 9-1, p. 6).  According to Waffle House, because Tucker alleged that she was discharged from her employment on December 23, 2010, she was obligated to file her charge of discrimination on October 19, 2011.  *Id.* at 6-7.  However, instead of filing a charge of discrimination, she filed an "Intake Questionnaire," signed on September 25, 2011.  *Id.*; (R. Doc. 1-2, p. 10).  Waffle House argues that submission of this document failed to satisfy the filing requirement.  *Id.*  Waffle House attaches the Charge in support of its claims.  (R. Doc. 9-2).

Waffle House also contends that the plain language of the Intake Questionnaire cautions that "filling out and bringing us or sending [the EEOC] this [intake] questionnaire does not mean that you have filed a charge."  (R. Doc. 22, p. 2).  Waffle House also points out that the EEOC itself dismissed Tucker's charge because she failed to timely file.  *Id.* at 3.

In opposition, Tucker states in conclusory fashion that she timely filed her complaint with both the EEOC and the Louisiana Commission on Human Rights; furthermore, she argues that

---

[17]Unsurprisingly, Waffle House does not specifically move to dismiss this claim.

[18]In support of its motion to dismiss, Waffle House argues that Tucker's federal gender discrimination claims should be dismissed because Tucker failed to request EEOC enforcement on her Intake Questionnaire.  (R. Doc. 9-1, p. 10).  The Charge reflects this argument, because thereon the box for discrimination on the basis of sex is not checked. (R. Doc. 9-2, p. 1).  Tucker states in her opposition that because she to failed actually claim gender discrimination when she filed her documents with the EEOC, she cannot dispute the dismissal of a gender claim.  (R. Doc. 16, p. 5).  Waffle House in its Reply argued that Tucker's gender discrimination claims should be dismissed as unopposed.  (R. Doc. 22, p. 1).  Tucker's Questionnaire indeed reflects that she failed to check the appropriate box.  Regardless whether failure to check an appropriate box on an EEOC questionnaire would likely lead to dismissal of the claim, *See Turner v. Novartis Pharmeceuticals*, No. 0-0175, 2011 WL 901022, at *3 (E.D. La. Mar. 11, 2011) (quoting *Turner v. St. Luke's Episcopal Health Systems*, 2008 WL 706709, at *8 (S.D. Tex. Mar. 14, 2008)), the Court finds that Tucker's gender discrimination claim is also susceptible to disposition under the same analysis used to dispose of her race and age discrimination claims.

Waffle House had sufficient notice of her claims in the Complaint. (R. Doc. 16, pp. 4-5). Before considering the arguments of the parties, the court will first consider whether two other relevant documents which have been submitted are appropriate for consideration.

a.   **Consideration of Documents Submitted**

i.   **EEOC Charge of Discrimination**

In support of its motion, Waffle House argues that the Charge should be considered by the Court because it is referenced in Tucker's Complaint, and is central to Tucker's claim. (R. Doc. 9-1, p.3 & n.3). However, the Fifth Circuit has cautioned that consideration of exhibits not attached to the Complaint is an exception to the "general" practice of 12(b)(6) analysis. *See Wilson*, 667 F.3d at 595. Moreover, this exception is of "limited" scope. *Scanlan v. Texas A&M University*, 343 F.3d 533, 536 (5th Cir. 2003). To fit within this limited exception, a document attached to a motion to dismiss must first be "explicitly" referenced in the Plaintiff's Complaint. *Werner v. Department of Homeland Security*, 441 F. App'x 246, 248 (5th Cir. 2011) (converting motion to dismiss into motion for summary judgment, where trial court considered depositions which had not been "explicitly referenced" in the Complaint"). The document must also be "central" to a plaintiff's claim. *Id.*

In this case, Tucker neither attached the Charge to, nor "explicitly referenced" the Charge in, her Complaint. Instead, the Complaint states only that Tucker *filed* her claims with the EEOC and the Louisiana Commission on Human Rights on October 9, 2011, and *received* notice of her Right to Sue from the EEOC on November 8, 2011. Therefore, the Court need not reach the issue of whether the Charge is "central" to Tucker's claims in order to determine that it falls outside the scope of 12(b)(6)'s "limited" exception for documents not properly attached to the Complaint.

However, the Court may also take judicial notice of the document as a public record for purposes of its 12(b)(6) analysis. *Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011). Federal Rule of Evidence 201(b) states that a Court may take judicial notice of a fact only when that fact is "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Id.*

A Court may take judicial notice of a fact, and must take judicial notice of a fact "if requested by a party *and* supplied with the necessary information." *Id.* at 201(c)-(d) (emphasis added).

In the Fifth Circuit, district courts have found that "[e]ven though an EEOC charge is a matter outside the pleading, judicial notice of it *may* be taken as a matter of public record when deciding a Rule 12(b)(6) motion, especially since its authenticity is uncontested." *King v. Life School*, 809 F. Supp. 2d 572, 579 (N.D. Tex. 2011) (emphasis added); *Carter v. Target Corp.*, 2012 WL 4867719, at *3 (W.D. La. Oct. 12, 2012). *But cf. Lightfoot v. OBIM Fresh Cut Fruit Co.*, 2008 WL 4449512, at *1 (N.D. Tex. Oct. 2, 2008) (declining to consider administrative charge and right-to-sue letter where "those documents [were] not authenticated . . . or filed as part of the official electronic records for this case.").

Here, Waffle House attached the Charge to its motion, and indicated that the Court may take judicial notice of it. Although Waffle House failed to expressly request that the Court take judicial notice of the document, the Court construes Waffle House's suggestion as an implied request. The Court's power to consider the document is therefore discretionary pursuant to F.R.E. 201(d). The Court will exercise its discretion and take judicial notice of the Charge.

### ii.    EEOC Letter

In support of her opposition, Tucker attaches a letter from the EEOC to Tucker dated October 24, 2011. (R. Doc. 16-3) ("EEOC Letter"). The EEOC Letter acknowledges receipt of a "charge of employment discrimination" for Tucker's Title VII and ADEA claims. *Id.* The EEOC Letter also states that the EEOC "will send a copy of the charge" to the Louisiana Commission on Human Rights. *Id.*

Courts have found that consideration of documents attached to an *opposition* to a motion to dismiss may also be considered for purposes of a 12(b)(6) motion. *See Walch*, 533 F.3d at 294. Consideration is appropriate where the "document is sufficiently referenced in the complaint and is of unquestioned authenticity." *Keel v. Wal-Mart Stores, Inc.*, 2012 WL 488248, at *2 (E.D. Tex. Jan. 11, 2012); *Jefferson v. Astrue*, No. 11-2073, 2012 WL 1118639, at *2 (E.D. La. Feb. 28, 2012) (quotation omitted) (considering documents whose authenticity was established through a

declaration made under penalty of perjury).  Here, although the authenticity of the EEOC Letter is not contested by Waffle House in its Reply, the letter fails to satisfy the "limited" exception for inclusion because, similar to the Charge, it is not "explicitly referenced" in Tucker's Complaint.

The next issue is whether the Court should take judicial notice of the EEOC Letter.  The applicable case law suggests, but does not conclusively mandate, that the Court should elect to take judicial notice of the document.  Courts in this circuit have used broad definitions of the types of EEOC records for which judicial notice can be taken  *See, e.g.*, *Wilson*, 2003 WL 22384933, at *2 (taking judicial notice of "EEOC documents"); *Martin v. Rainbow Casino*, 2012 WL 1883673, at *1 (S.D. Miss. May 22, 2012) (same); *Henry v. Parkwest Staffing Services, Inc.*, 2012 WL 950213, at *2 n.3 (S.D. Tex. Mar. 20, 2012) (same).

This inclusive characterization reflects the trend of courts elsewhere, which have expanded the scope of "judicial notice" to include EEOC documents other than a "formal" Charge of Discrimination.  *See, e.g.*, *Rogan v. Giant Eagle, Inc.*, 113 F. Supp. 2d 777, 782 (W.D. Pa. 2000) ("It is clear to use that . . . we may consider the EEOC charge and related EEOC documents, including the letter from the EEOC summarizing its investigation . . . as information which is a matter of public record."); *Caplinger v. Uranium Disposition Services, LLC*, 2009 WL 367407, at *2 (S.D. Ohio Feb. 11, 2009) ("Documents filed with, and coming from, the EEOC are considered matters of public record."); *Kuper v. Colonial Penn Insurance Co.*, 1999 WL 317077, at *1 (E.D. Pa. May 18, 1999) (considering documents "generated or maintained by the [EEOC] in the course of its investigation and processing of [plainitff's] discrimination charge."); *Bluford v. Swift Transportation*, 2012 WL 1755772, at *1 n.3 (N.D. Ill. May 16, 2012) (finding that judicial notice would properly be taken if letter was an amendment to an EEOC Charge of Discrimination); *Jenkins v. St. Luke's-Roosevelt Hospital Center*, 2009 WL 3682458, at *5 (S.D.N.Y. Oct. 29, 2009) (taking judicial notice of "administrative complaints" filed with both the EEOC and applicable state agency); *Martin v. Anheuser-Busch*, 2006 WL 827850, at *5 (D.N.J. Mar. 30, 2006) (finding that Intake Questionnaire stamped "received" by the EEOC became a matter of public record).

Here, the EEOC Letter is dated the same day as the Charge, and was also mailed to Tucker.

It states that the EEOC has "acknowledged receipt" of the claims placed in the Charge, and that the EEOC had begun investigating the same types of allegations as were set out in the Charge. It additionally states that a copy of the Charge will be mailed to the Louisiana Commission on Human Rights. The Fifth Circuit has found that judicial notice can be taken of agency letters which were "publicly available." *See Funk*, 631 F.3d at 782-83 (finding judicial notice appropriate for publicly available FDA letter to medical device manufacturer which granted pre-market approval).

However, despite substantial indicia that this document is likely a transmittal letter which the EEOC mailed to Tucker along with the Charge, the Court finds that for purposes of "judicial notice" it cannot be properly considered. The parties do not indicate that the EEOC Letter ever became "publicly available." Taking judicial notice of all routine administrative agency communications would, without an explicit and detailed showing of why such documents should qualify as "public records," would needlessly dilute the standard under F.R.E. 201(b); a document is not transformed into a "public record" solely by virtue of the fact that it was generated by an agency.

Thus, the Court finds that the EEOC Letter cannot be considered without converting the motion to one for summary judgment. The Court declines to do so, and instead disregards the letter.

### b. Legal Analysis of Tucker's Claims for Race, Age, and Gender Discrimination

#### i. Charge Filing and Receipt; Exhaustion

Under either Title VII or the ADEA, a party seeking to bring a private suit must first exhaust his or her administrative remedies. *McClain v. Luifkin Industries, Inc.*, 519 F.3d 264, 272 (5th Cir. 2008); *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002); *Vendenweghe v. Jefferson Parish*, No. 11-2128, 2012 WL 1825300, at *4 (E.D. La. May 18, 2012). Exhaustion occurs after a plaintiff files a timely EEOC charge, and *receives* a right-to-sue letter. *Taylor*, 296 F.3d at 378-79. Under either Title VII or the ADEA, in order to exhaust her claim, a plaintiff must file a charge of discrimination with the EEOC no later than 180 days after the alleged discriminatory act occurred. 42 U.S.C. § 2000e-5(e)(1); 29 U.S.C. § 626(d). This period "generally begins to run

when the employee receives notice of the allegedly discriminatory decision, not when the employment actually ceases." *Conaway v. Control Data Corp.*, 955 F.3d 358, 362 (5th Cir. 1992).

In "deferral states" such as Louisiana, the 180-day period is extended to 300 days where the plaintiff also brings claims under applicable state law. *Walton-Lentz v. Innophos, Inc.*, 476 F. App'x 566, 570-71 (5th Cir. 2012); *Mayes v. Office Depot, Inc.*, 292 F. Supp. 2d 878, 888 (W.D. La. 2003). The state must have jurisdiction over each claim of discrimination for that claim to be entitled to the tolling period. 29 C.F.R. § 1601.13. Under Louisiana law, Tucker was entitled to bring claims for age, race, or gender discrimination, La. Rev. Stat. Ann. art. 23:312; 23:332. The Louisiana Commission on Human Rights has jurisdiction over all three claims, and therefore Tucker is entitled to the 300-day filing period for each of them. *See* La. Rev. Stat. Ann. art 23:303(D)).

A Charge of Discrimination is considered "filed" with the EEOC when it is "*received.*" 29 C.F.R. § 1601.13(a) (emphasis added). "Mailing is not filing for purposes of Title VII." *Taylor v. General Telephone Co. of Southwest*, 759 F.2d 437, 442 (5th Cir. 1985); *Kirkland v. Big Lots Stores, Inc.*, 2013 WL 495782, at *2-*3 (W.D. La. Feb. 7, 2013) (rejecting argument that Charge was "filed" when "mailed," and that "the earliest date that Plaintiff's charge can be deemed "filed" within the bounds of [Title VII] is the date the EEOC *received* the questionnaire."); *Templeton v. Western Union Telegraph Co.*, 607 F.2d 89, 91 (5th Cir. 1979) (applying rule to ADEA).[19]

As noted above, to determine whether Tucker's filing was timely, the Court will consider Tucker's Complaint, its "proper attachments," *Wilson*, 667 F.3d at 595, and the Charge together. The Court finds that Tucker's Complaint states that she filed her claims with the EEOC on October 19, 2011. (R. Doc. 1-2, p. 4).[20] The EEOC then issued the Charge on October 24, 2011. (R. Doc.

---

[19]By contrast, 29 C.F.R. § 1601.13 explicitly mandates that where a Charge is filed which includes an allegation under state law, the state law charges are to be forwarded to the appropriate local agency and these "[s]tate or local proceedings are deemed to have commenced on the date such document is *mailed. . . .*" *Id.* at § 1601.13(a)(4)(i)(B) (emphasis added).

[20]It is clear from the "proper attachments" to her Complaint that "October 9, 2011" is a typographical error. Tucker's Complaint references "Exhibit D," which Waffle House contends is her EEOC Intake Questionnaire. (R. Docs. 9-1, p. 7; 1-2, p. 8). Because the "attachments" to Tucker's Complaint are not marked with exhibit letters, it is not entirely certain that "Exhibit D" refers to the Intake Questionnaire. However, other similarities in the Complaint lend credence to the inference that Tucker meant the "charge of discrimination" at "Exhibit D" to refer to her EEOC Intake

9-2, p. 1).   October 19, 2011 is exactly 300 days after December 23, 2010, the date Tucker's employment was terminated; October 24, 2011, is 305 days after that fact.

The documentation only provides the claimant the ability to mail a discrimination charge. No electronic means of filing is permitted.   As such because Tucker *mailed* her claim on the last day of the 300-day period, the *charge* was not timely filed.   The documents established that Tucker's "Charge" was not received until five days after the limitations period ran.   Therefore, Tucker failed to timely exhaust her administrative remedies.

### ii.      Effect of Earlier Signing of Intake Questionnaire

The next issue is whether Intake Questionnaire, which is signed by Tucker on September 25, 2011, can operate to effect an earlier filing period.   (R. Doc. 1-2, p. 15).

Courts in the Fifth Circuit have found that such questionnaires can qualify as a Charge where the document "informs the EEOC of the identity of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent."   *Conner v. Louisiana Dep't of Health and Hospitals*, 247 F. App'x 480, 481 (5th Cir. 2007).   The test for sufficiency is whether the document "set[s] the administrative machinery in motion."   *Price v. Southwestern Bell Telephone Co.*, 687 F.2d 74, 78 (5th Cir. 1982).   Moreover, "[a] charge may be amended to cure technical defects or omissions . . . or to clarify and amplify allegations made therein.   Such amendments . . . related to or growing out of the subject matter of

---

Questionnaire.  For example, the Complaint states that "Exhibit A" is a June 20, 2011 letter from Waffle House to Tucker, and the first document following the Compliant is in fact a June 20, 2011 letter from Waffle House to Tucker. Similarly, "Exhibit C" refers to a "discrimination claim" filed with the Louisiana Commission on Human Rights.  The fourth separate document attached to the Complaint, which Waffle House contends is in fact "Exhibit D," is the Intake Questionnaire.  Indeed, Tucker states that the document was filed on October 19, 2011 in her Opposition.  (R. Doc. 16, p. 1).

[20]The Court notes that under the pre-*Twombly* 12(b)(6) standard, in which all "ambiguities or doubts regarding the sufficiency of the claim [are construed] in favor of the plaintiff," a reading of Tucker's Complaint could lead to construal of this ambiguity in Tucker's favor.  *See Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). For example, it remains theoretically possible that Tucker made a mistake in attaching the Intake Questionnaire to her Complaint, and that she in fact filed a "Charge of Discrimination" on October 9, 2011, as stated in her Complaint. Because October 9, 2011 would only be 290 days from her employment termination date on December 23, 2010, and 291 days from the last alleged discriminatory statement on December 22, 2010, Tucker's Motion to Dismiss could be construed as timely.  However, this construction is too far-reaching to constitute an exercise of judicial "common sense" under the post-*Twombly* 12(b)(6) standard.

the original charge will relate back to the date the charge was first *received*." 29 C.F.R. § 1601.12 (emphasis added); *Harrison v. Estes Express Lines*, 211 F. App'x 261, 265-66 (5th Cir. 2006).

In this case, even assuming *arguendo* that the Intake Questionnaire signed by Tucker on September 25, 2011 was sufficient to "set[] the administrative machinery in motion," Tucker never stated that she "filed" the Intake Questionnaire on the date it was signed, September 25, 2011, nor on any other date prior to October 19, 2011. There is simply no statement in Tucker's Complaint that her claims were "filed" at an earlier date, regardless of when it was signed. Therefore, the fact that the Intake Questionnaire may have been signed on September 25, 2011 fails to demonstrate that it was *received* by the EEOC for purposes of satisfying the timely administrative exhaustion requirement under both the Code of Federal Regulations and the applicable Fifth Circuit case law. *See, e.g.*, *Taylor*, 759 F.2d at 442; *Kirkland*, 2013 WL 495782, at *2-*3.

### iii. Equitable Tolling

The final issue is whether the limitations period should be tolled. "Filing of a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Galvan v. Bexar County, Texas*, 785 F.2d 1298, 1305 (5th Cir. 1986).[21] The Fifth Circuit has found that a failure to specifically raise untimeliness in a motion to dismiss operates as a waiver of the same. *Hernandez v. Hill Country Telephone Co-op, Inc.*, 849 F.2d 139, 142 (5th Cir. 1988) (rejecting proposition that "a motion to dismiss for failure to state a claim upon which relief can be granted implicitly raises all limitations which might be advanced in defense of the claim.").[22]

---

[21]Admittedly, *Zipes* was a Title VII case, and not an ADEA case. However, the Fifth Circuit has applied the reasoning in *Zipes* to ADEA cases where the "jurisdictional prerequisite" of timely filing was at issue. *See Galvan*, 785 F.2d at 1305 & n.11.

[22]There is currently some disagreement as to whether, in addition to the failure to timely *file* a claim, the failure to timely *exhaust* a claim is non-jurisdictional. *See Gulf Restoration Network v. Salazar*, 683 F.3d 158, 173-74 (5th Cir. 2012) (quoting *Zipes*, and finding that "The Court similarly has treated as nonjurisdictional other types of threshold requirements that claimants must complete, or exhaust, before filing a lawsuit."); *Pacheco v. Mineta*, 448 F.3d 783, 787-88 & n.7 (5th Cir. 2006) (noting conflict); *Firmin v. Richard Construction, Inc.*, 2012 WL 5332998, at *3 (E.D. La. Oct. 26, 2012) (distinguishing between non-jurisdictional *filing* of a claim, and jurisdictional *exhaustion* of a claim).

Here, Waffle House explicitly raised the issue of untimeliness in its Motion.  (R. Doc. 9-1, pp. 3-4).  Therefore, the burden shifts to Tucker to demonstrate why the court should furnish her with this equitable remedy.  *See Conaway*, 955 F.3d at 362.  The Court finds that there is no adequate reason to toll the 300-day period.  Tucker's opposition argues that "The EEOC incorrectly stated that [her filing] was untimely as Ms. Tucker was following company procedure and allowing Waffle House to fix the problem."  (R. Doc. 16, p. 2).  Even assuming *arguendo* that this would absolve Tucker's untimely filing, Waffle House's letter admitting that some "discrimination" had occurred was dated June 20, 2011, well in advance of the EEOC filing deadline.  (R. Doc. 1-2, p. 8).  Tucker does not indicate that any other "steps" were taken to solve the problem, or otherwise indicate why she is entitled to equitable tolling.

Courts in the Fifth Circuit have found that far more comprehensive explanations did not warrant the extension of equitable relief for failure to timely file.  *See, e.g.*, *Taylor*, 759 F.3d at 442 (finding that mistaken calculation leading to one-day delay in EEOC's receipt of claim was unsatisfactory); *Vaughans v. Delta Health Group, Inc.*, 180 F.3d 264, 1999 WL 301375, at *1 (5th Cir. Apr. 28, 1999) (Table, text in Westlaw) (finding that party's mailing of charge to EEOC on the last day of the filing period was insufficient to warrant equitable tolling).  Tucker's proffered reason for the delay, in the context of this Fifth Circuit guidance, is unsatisfactory.

In sum, Waffle House's motion should be granted, and Tucker's federal claims for race, age, and gender discrimination should be dismissed.

### D.   <u>Leave to Amend</u>

Having granted Waffle House's motion as to all of Tucker's federal claims, the next issue is whether Tucker should be given leave to amend her Complaint.

In her Opposition, Tucker requests that even if the Court determines that dismissal of her current Complaint is warranted, Tucker should be permitted time to amend the Complaint to plead her allegations with more specificity.  In its Reply, Waffle House argues that any such amendment

---

However, in this case there is no question that *Zipes* remains good law for the non-jurisdictional filing requirement, which is the only issue currently before the Court.

would be futile, because her claims are "all untimely."  (R. Doc. 22, p. 4).

Under Rule 15, "[a] party may amend its pleading once as a matter of course within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b) . . . whichever is earlier."  In this case, Tucker filed her Complaint on October 4, 2012; and Waffle House filed in the instant motion to dismiss on December 6, 2012.  Tucker may not amend her Complaint as a matter of course.

Nevertheless, under Rule 15, a motion to file an amended Complaint more than 21 days after filing of a 12(b)(6) motion should be "freely given when justice so requires."  Rule 15(a)(2).  This, and other federal rules "reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits."  *Conley v. Gibson*, 355 U.S. 41, 48 (1957).  Thus, Rule 15(a) evinces a liberal amendment policy and a motion to amend should not be denied absent a substantial reason to do so.  *See Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998).  "This policy is certainly strongest when the motion challenged is the first motion to amend."  *Thompson v. New York Life Insurance Co.*, 644 F.2d 439, 444 (5th Cir. 1981).

However, leave to amend is by no means automatic.  *Addington v. Farmer's Elevator Mutual Insurance Co.*, 650 F.2d 663, 666 (5th Cir. 1981).  The decision to grant or deny a motion for leave to amend lies within the sound discretion of the trial court.  *Id.*  As outlined by the Supreme Court, courts in this Circuit examine five considerations to determine whether to grant a party leave to amend a complaint: (1) undue delay; (2) bad faith, or dilatory motive on the part of the movant; (3) repeated failure to cure deficiencies by amendments previously allowed; (4) undue prejudice to the opposing party by virtue of allowance of the amendment; and (5) futility of the amendment.  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 864 (5th Cir. 2003) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)).  Absent any of these factors, leave to amend a complaint should be "freely given."  *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citing *Forman*, 371 U.S. at182).

A Court may deny a motion to amend if "the proposed amendment would be futile because

it could not survive a motion to dismiss." *Rio Grande Royalty Co. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010). However, a Court may not foreclose a party's ability to amend where such futility is not facially impossible. *See Jaso v. The Coca Cola Co.*, 435 F. App'x 346, 353-54 & n.6 (5th Cir. 2011) (finding that motion to amend should be granted where claims were not facially barred). "When a claim is subject to dismissal under Rule 12(b)(6) for failure to state a claim, district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies . . . unless it is clear that the defects are incurable." *Chung v. Ladybug Skincare Salon of Houston, Texas*, 2012 WL 4629875, at *6 (S.D. Tex. Sept. 13, 2012) (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 331 F.3d 305, 329 (5th Cir. 2002)).

In this case, Tucker has failed to file an amended complaint, but has requested permission to file. Tucker provides no insight into why her failure to timely plead her federal Title VII and AEDA claims, or more specifically plead her federal constitutional claims, would improve by asserting them with more specificity. Indeed, the Court notes that Tucker has failed to specify which of her claims would or would not be futile, which claims will be re-pled, or how any of her claims will be re-pled with more "specificity."

In sum, although the Court is mindful of the permissive amendment standard under Rule 15, Tucker has simply failed to meet her burden under Rule 15 to show why she should be entitled to amend her Complaint. The Court finds that this failure, conjoined with the circumstances which have prompted dismissal of the action, make this the relatively rare case in which the Court may deny a motion for leave to file an amendment. Accordingly, Tucker's request to amend is denied.

## E.    Supplemental Jurisdiction - State Law Claims

Because all of Tucker's federal law claims have been dismissed and her leave to file an amendment has been denied, the last issue is whether the Court should exercise supplemental jurisdiction over Tucker's remaining state law claims. According to Waffle House, Tucker has brought such claims for (a) racial discrimination, (b) gender discrimination, (c) age discrimination, (d) harassment, (e) abuse of process, (f) conversion, (g) "malicious actions," as well as a claim under the Louisiana State Constitution. *See* (R. Docs. 1-2; 9-1). Waffle House has moved to dismiss all

of these claims.  (R. Doc. 9-1).

"[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are *so related* to claims in the action within such original jurisdiction that they form part of the same case or controversy. . . ." 28 U.S.C. § 1367(a) (emphasis added).  In order to exercise supplemental jurisdiction, three factors are required: (1) the federal claim must confer subject matter jurisdiction on the court; (2) the state and federal claims must derive from a common nucleus of operative facts, and (3) the claims are such that they would all ordinarily be tried in one judicial proceeding.  *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).  Further, supplemental jurisdiction promotes "judicial economy, convenience, and fairness to litigants."  *Id.* at 726.  However, the District Court may decline to exercise supplemental jurisdiction over a state law claim where:

> (1) the claim raises a novel or complex issue of State law,
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
> (3) the district court has dismissed all claims over which it has original jurisdiction, or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

*Id.* at § 1367(c).  "When the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."  *Carnegie-Mellon University v. Cohill*, 484 U.S. 343, 350 (1988).  "In the Fifth Circuit, the "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed."  *Parker & Parsely Petroleum Co. v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992).  However, "this rule is neither mandatory nor absolute."  *Batiste v. Island Records, Inc.*, 179 F.3d 217, 227 (5th Cir. 1999).  In considering whether to exercise supplemental jurisdiction in these circumstances, the Court should consider whether "judicial economy, convenience, fairness, federalism, and comity" favor retention of the remaining state claims.  *Newport Ltd. v. Sears Roebuck & Co.*, 941 F.2d 302, 307 (5th Cir. 1991).

Here, since all of Tucker's federal claims have been dismissed, consideration of the merits of Tucker's state law claims would not generally be appropriate; indeed, the typical practice is to

find § 1367(c)(3) wholly sufficient warrant dismissal of state law claims. *See, e.g.*, *Rixner v. Laravia*, No. 11-2090, 2012 WL 1836256, at *12 (E.D. La. May 21, 2012) (Roby, M.J.) (declining to exercise jurisdiction over state law claims after finding, at summary judgment stage, that all federal claims should be dismissed); *Muller v. St. Tammany Parish*, No. 09-3362, 2010 WL 2464802, at *12 (E.D. La. Apr. 28, 2010) (adopting recommendation and declining to exercise jurisdiction over state law claims after finding, at motion to dismiss stage, that all federal claims should be dismissed), *recommendation adopted*, 2010 WL 2464801. *Accord*, *Brim v. ExxonMobil Pipeline Co.*, 213 F. App'x 303, 305 (5th Cir. 2007).[23]  As such, Tucker's state law claims are best left to the state courts.  Thus, pursuant to 1367(c)(3), to the extent Tucker has raised state law claims, these claims should be dismissed without prejudice as the Court declines to exercise its supplemental jurisdiction.

## IV.   Conclusion

Accordingly,

**IT IS ORDERED** that Defendant, Waffle House, Inc.'s, ("Waffle House) **Defendant's Rule 12(b)(6) Motion to Dismiss (R. Doc. 9)** is **GRANTED** in part and **DENIED AS MOOT** in part.

It is **GRANTED** as to any claims Tucker has brought under the Fourteenth Amendment of the U.S. Constitution.

It is **GRANTED** as to Tucker's federal law claims for gender, age, and racial discrimination brought under the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 *et seq.*

It is **GRANTED** as to any federal claims Tucker attempted to bring for retaliation.

It is **DENIED AS MOOT** as to all of Tucker's state law claims, including the Louisiana state Constitution.

---

[23]*See also Shorts v. Chinese Restaurant*, No. 10-1071, 2010 WL 3800894, at *3 (E.D. La. Aug. 31, 2010) (Roby, M.J.) (declining to exercise supplemental jurisdiction following dismissal for failure to state a claim under federal law); *Hall v. Stalder*, No. 04-0290, 2005 WL 2050288, at *8 (E.D. La. Aug. 5, 2005) (Roby, M.J.) (same); *Plaisance v. Bowles*, No. 08-5053, 2009 WL 5178305, at *7 (E.D. La. Dec. 23, 2009) (Barbier, J.) (adopting report of recommendation and finding that state law claims should be dismissed); *Hartwell v. Bowles*, No. 08-5120, 2009 WL 4891947, at *7 (E.D. La. Dec. 16, 2009) (same).

**IT IS FURTHER ORDERED** that the motion for leave to amend, as contained in Tucker's Memorandum in Opposition to Motion to Dismiss (R. Doc. 16) is **DENIED**.

**IT IS FURTHER ORDERED** that all of the claims Tucker has brought under Louisiana state law are **DISMISSED WITHOUT PREJUDICE**, subject to refiling in Louisiana state court, because the Court declines to exercise its supplemental jurisdiction under 28 U.S.C. § 1367(c).  *See, e.g.*, *Lamar County Electric Co-op Ass'n v. Rayburn Country Electric Co-op, Inc.*, 330 F. Supp. 2d 763, 767 (E.D. La. 2002) (considering case on motion to dismiss); *Joseph v. Nelson Coleman Correctional Center*, 2010 WL 5058195, at *16 (E.D. La. Nov. 30, 2010) (considering case on summary judgment).

New Orleans, Louisiana, this 11th day of April 2013.

_____

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**